**SO ORDERED.**

**SIGNED this 08 day of September, 2009.**



**JAMES D. WALKER, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | CASE NO. 09-10338-JDW |
| WINFRED ASA MCCOLLUM, JR., | ) | |
| | ) | |
| DEBTOR. | ) | |
| | ) | |
| WINFRED ASA MCCOLLUM, JR., | ) | ADVERSARY PROCEEDING |
| | ) | NO. 09-1024-JDW |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| DEANNA LYNN MCCOLLUM, | ) | |
| | ) | |
| DEFENDANT. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

<u>COUNSEL</u>

For Plaintiff:          Thomas D. Lovett
                        Post Office Box 1164
                        Valdosta, Georgia 31603-1164

For Defendant:          Michael M. Custer
                        Post Office Box 2023
                        Albany, Georgia 31702

**MEMORANDUM OPINION**

This matter comes before the Court on Debtor-Plaintiff's complaint to determine the

dischargeability of a debt.  This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(I).

After considering the pleadings, the evidence, and the applicable authorities, the Court enters the

following findings of fact and conclusions of law in conformance with Federal Rule of

Bankruptcy Procedure 7052.

**Findings of Fact**

Debtor-Plaintiff Winfred Asa McCollum, Jr. and Defendant Deanna Lynn McCollum

divorced in 2008 after more than 30 years of marriage.  During the divorce proceedings Debtor

consulted but declined to hire counsel.  Defendant was represented by an attorney throughout the

proceedings.  After some negotiations, the parties entered into a divorce settlement contract that

was incorporated into their divorce decree.

The settlement agreement provided for alimony, property division, and debt resolution.

With respect to the marital home, which was jointly owned by the parties and subject to two

mortgages, the agreement provided as follows:

> [Defendant] shall have and receive as her sole and absolute
> property full fee simple title to the above-described real property ...
> subject to the existing deeds to secure debt thereon identified
> immediately above, but free and clear of all rights and claims of
> [Debtor].  As indirect alimony for [Defendant], [Debtor] shall pay
> promptly as same becomes due all existing mortgage debt,
> including the secured debt secured by the deeds to secure debt
> referred to above, and any other existing liens against such
> property. ... [Debtor] shall execute and deliver to [Defendant] a
> Limited Warranty Deed and other such documents as may be
> necessary to perfect full fee simple title of record in the sole name
> of [Defendant] accordingly.

3

(Debtor's exhibit 4, Settlement Contract ¶ 1 (emphasis in original).)  With respect to the car

driven by Defendant, which was also jointly owned by the parties at the time of the divorce, the

agreement provided as follows:

> [Defendant] is awarded full title and ownership of said 2008 Ford
> Escape[1] vehicle subject to the existing lien thereon in favor of
> Tradition Credit Union.  As indirect alimony for [Defendant],
> [Debtor] shall pay promptly as same becomes due all secured debt
> on said 2008 Ford Escape ....  Upon satisfaction of such secured
> debt thereon, the parties shall execute any and all title certificates
> and other documents as may be necessary to perfect title to the
> 2008 For Escape in the name of [Defendant] accordingly.

(Debtor's exhibit 4, Settlement Contract ¶ 3.)

In addition to the house and car payments, the agreement contained numerous other

provisions requiring the division and/or sale of personal property, a timeshare, and Debtor's

retirement accounts; requiring monthly cash alimony payments; requiring Debtor to obtain a

$100,000 life insurance policy naming Defendant as the beneficiary; and requiring Debtor to pay

for COBRA health insurance for Defendant as long as it is available and to pay all her medical

expenses as long as he is required to pay alimony.  The parties had three children together, who

were adults at the time of the divorce.  Thus, the settlement agreement required no payment of

child support.  The divorce became final on June 10, 2008.

Debtor's monthly financial obligations under the agreement are as follows:

- first mortgage - $576;
- second mortgage - $180;
- payment for Defendant's car - $451;
- life insurance premium - $85;
- COBRA premium - $746;

---

[1] The settlement agreement misidentified the model of the car.  The parties agree it is
actually a 2008 Ford Edge.

- Defendant's average medical expenses not covered by COBRA - $330; and
- Cash alimony - $1,400

Thus, Debtor's ongoing financial obligations to Defendant total an average of $3,768 per month.

When that figure is subtracted from Debtor's average monthly take home pay of $5,546 per

month,[2] he is left with $1,778 to pay his living expenses, including housing.  In other words,

approximately 68 percent of Debtor's net income is paid to or for the benefit of Defendant

pursuant to the divorce settlement agreement.

On February 23, 2009, Debtor filed a Chapter 13 petition.  He concedes that the majority

of his ongoing payments under the divorce settlement agreement are excepted from discharge as

domestic support obligations.  Nevertheless, he filed an adversary proceeding to determine the

dischargeability of his obligation to pay the debts on the house and on Defendant's car.

Debtor is an electrician for MillerCoors.  He usually works seven days a week for a total

of 70 to 75 hours.  In addition, he works holidays whenever possible, earning overtime pay for

the extra hours.  Defendant is not currently employed.  Although she has, in the past, sporadically

and briefly worked at various odd jobs, she never held any long-term employment during the

marriage.  She testified she suffers from rheumatoid arthritis, fibromyalgia, and high blood

pressure, which currently prevent her from working.  She has applied for SSI and disability

---

[2] The figure represents Debtor's average monthly net pay for 2008 after deductions for
taxes, union dues, social security, medical insurance, and flexible spending account
contributions.  There was some question raised during trial about whether this figure is exclusive
of 401(k) contributions.  Debtor testified that he was making 401(k) contributions prior to the
divorce but stopped making them in August or September of 2008 to free up more money to
satisfy his divorce obligations and to pay his own living expenses.  His schedule I, which
contemplates 401(k) contributions of $624, shows a net income of $5,001.  Thus, taking taxes
into account, the $5,546 figure is a reasonable estimate of his net income after he stopped the
401(k) contributions.

benefits but was rejected because she exceeded income limits and had an insufficient

employment history.  Thus, the cash alimony payments made by Debtor are Defendant's sole

source of income.

The only payments at issue in this case are the house payments and the payments for

Defendant's Ford Edge.  Defendant testified that she understood the house and car payments

would stop if she died or remarried and that she discussed her understanding with Debtor.

However, Debtor testified that he did not have the same understanding.  While he knew the

alimony and insurance obligations would cease upon Defendant's death or remarriage, he had not

thought about how those circumstances would affect the car and house payments.  Nevertheless,

he said he believed he was required to make the payments until the loans were fully satisfied.  In

addition, Debtor testified that when he was preparing his 2008 taxes, Defendant called him and

told him not to list the house and car payments as alimony.  According to Debtor, Defendant said

she did not intend to claim them as alimony, and their returns had to be consistent or they might

trigger an audit.  Debtor testified he consulted the IRS website and was satisfied that property

settlement or any money he paid for Defendant's property was not alimony for tax purposes.

Defendant did not refute Debtor's testimony about the tax treatment of the payments at issue.

The Court held a trial on August 14, 2009, at which time the parties presented evidence

and argued their positions.  For the reasons that follow, the Court finds Debtor's obligation to

pay the mortgage debts and car debt are dischargeable.

**Conclusions of Law**

<u>Overview</u>

A Chapter 13 debtor is entitled to a discharge of most debts after completion of all plan

payments.  11 U.S.C. § 1328(a).  Debts excepted from discharge include those "of the kind

specified ... in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a)[.]"  Id. §

1328(a)(2) (commonly referred to as the "superdischarge").  Thus, while a Chapter 13 debtor

cannot discharge debts described in § 523(a)(5), nothing in the Chapter 13 discharge provision

prevents him from discharging debts that fall within the scope of its companion provision, §

523(a)(15).

 Sections 523(a)(5) and (a)(15) collectively apply to a debtor's financial obligations

pursuant to a divorce or separation agreement.  Subsection (a)(5) excepts from discharge debts

for "a domestic support obligation," which is defined in § 101(14A) as a prepetition debt

> (A) owed to or recoverable by–
>  (I) a spouse, former spouse, or child of the debtor or such
> child's parent, legal guardian, or responsible relative; or
>  (ii) a governmental unit;
> (B) in the nature of alimony, maintenance, or support (including
> assistance provided by a governmental unit) of such spouse, former
> spouse, or child of the debtor or such child's parent, without regard
> to whether such debt is expressly so designated;
> (C) established or subject to establishment before, on, or after the
> date of the order for relief in a case under this title, by reason of
> applicable provisions of–
>  (I) a separation agreement, divorce decree, or property
> settlement agreement;
>  (ii) an order of a court of record; or
>  (iii) a determination made in accordance with applicable
> nonbankruptcy law by a governmental unit; and
> (D) not assigned to a nongovernmental entity, unless that
> obligation is assigned voluntarily by the spouse, former spouse,
> child of the debtor, or such child's parent, legal guardian, or
> responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A) (emphasis added).

 Subsection (a)(15) applies to debts that do not fall with the definition of a domestic

support obligation but were, nevertheless, "incurred by the debtor in the course of a divorce or

separation or in connection with a separation agreement, divorce decree or other order of a court

of record[.]" Id. § 523(a)(15).  For expediency, debts under § 523(a)(5) are generally referred to

as being in the nature of alimony or support, while debts under § 523(a)(15) are referred to as

being in the nature of property division.  The question in this case is whether the house and car

payments at issue are nondischargeable support obligations within the scope of § 1328(a)(2) and

§ 523(a)(5).

Burden of Proof

The party with the burden of proof must prove its case by a preponderance of the

evidence.  Grogan v. Garner, 498 U.S. 279, 287-88, 111 S. Ct. 654, 659-60 (1991).  Debtor has

argued that Defendant, as the creditor in this case, bears the burden of proof even though she is

the defendant.  Neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure state

which party bears the burden of proof in a nondischargeability case.  The Federal Rules of

Evidence are likewise silent as to burdens of proof.  However, when assigning the burden of

proof, courts generally consider three factors: (1) policy considerations underlying the

substantive law; (2) which party is asserting the least probable set of facts; and (3) which party

has the better access to evidence.  21B Fed. Prac. & Proc. Evid.2d § 5122 (2009).  When these

considerations fail to favor placing the burden on a particular party, courts generally assign the

burden to plaintiffs by default.  Id.  In this case, neither party has superior access to evidence or

asserts a less probable set of facts.  Policy considerations are equally unhelpful.  Bankruptcy

policy in general favors the debtor's fresh start.  Garner, 498 U.S. at 286-87, 111 S. Ct. at 659.

The nondischargeability provisions of § 523(a) are an exception to that policy, but they are

8

nevertheless narrowly construed to protect the fresh start.  Id.; Guerra v. Fernandez-Rocha (In re

Fernandez-Rocha), 451 F.3d 813, 816 (11th Cir. 2006).  Thus, the competing policy

considerations in a nondischargeability action are somewhat of a wash and cannot be said to

clearly favor one party over the other with respect to burden of proof.

Bankruptcy courts often describe the burden as resting with the creditor or the party

seeking a declaration of nondischargeability in a § 523(a) proceeding.  See, e.g., Sampson v.

Sampson (In re Sampson), 997 F.2d 717, 723 (11th Cir. 1993) ("The party seeking to hold the

debt nondischargeable has the burden of [proof]").  However, § 523(a) cases are generally

initiated by the creditor.  See 4 Collier on Bankruptcy ¶ 523.04 (15th ed. rev'd 2009).  An

exception is found in cases brought pursuant to § 523(a)(8) to discharge student loan debt.  In

such cases, the debtor is typically the plaintiff, and the debtor bears the burden of proof.  See

Educational Credit Mgmt. Corp. v. Mosley (In re Mosley), 494 F.3d 1320, 1324 (11th Cir. 2007)

("To establish undue hardship, the Brunner standard requires the debtor to prove [the Brunner

test] by a preponderance of the evidence[.]"); Hemar Ins. Corp. of Amer. v. Cox (In re Cox), 338

F.3d 1238, 1241 (11th Cir. 2003) (same).

This case is similar to student loan cases in that Debtor filed the suit to obtain a

determination of dischargeability rather than a determination of nondischargeability.  Because

Debtor can cite no law that requires or policy that favors placing the burden of proof on the

creditor when the creditor is the defendant rather than the plaintiff, the Court will decline to do

so.  Instead, the Court finds Debtor should bear the burden of proof as the party who initiated the

adversary proceeding.

<u>Support vs. Property Division</u>

9

Whether or not the debts at issue are in the nature of support or property division is a question of federal law that is guided by reference to state law.  Cummings v. Cummings, 244 F.3d 1263, 1265 (11th Cir. 2001).  In making a decision, the Court must look beyond any labels used by the parties and instead determine whether "at the time of its creation the parties intended the obligation to function as support or alimony."  Id.  Factors relevant to this inquiry include: (1) the language of the divorce agreement; (2) the relative financial positions of the parties at the time of the agreement; (3) the amount of property division; (4) whether the obligation terminates on the death or remarriage of the beneficiary; (5) the number and frequency of payments; (6) whether the agreement includes a waiver of support rights; (7) whether the obligation can be modified or enforced in state court; and (8) whether the obligation is treated as support for tax purposes.  See 4 Collier on Bankruptcy ¶ 523.11[6][a]-[h].

Beginning with the language of the agreement, both parties argue it supports their position.  Debtor contends the agreement groups various types of obligations together.  The first group, including paragraphs 1 to 8, is comprised of property division.[3]  The second group, including paragraphs 9 to 12, deals with the division of Debtor's retirement benefits.  The third group, including paragraphs 13 to 15, represents alimony and support.[4]

Debtor notes that each of his obligations in the "alimony" group will, by the express terms of the agreement, cease upon Defendant's death or remarriage.  For example, under

_____

[3] Paragraph 1 provides for the marital residence.  Paragraph 2 provides for furniture and personal property.  Paragraph 3 provides for Defendant's car.  Paragraphs 4, 5, and 6 provide for Debtor's vehicles.  Paragraph 7 provides for a boat.  Paragraph 8 provides for a vacation timeshare.

[4] Paragraph 13 provides for cash alimony.  Paragraph 14 provides for life insurance benefits.  Paragraph 15 provides for health and medical benefits.

paragraph 13, the cash alimony will continue "until such time as [Defendant] should die or

remarry." (Debtor's exhibit 4, Settlement Contract ¶ 13.)  Under paragraph 14, Debtor is

required to maintain life insurance "[f]or so long as [he] is obligated to pay direct alimony to, or

indirect alimony for the benefit of" Defendant.  (Debtor's exhibit 4, Settlement Contract ¶ 14.)

Similarly, paragraph 15 requires Debtor to pay Defendant's medical costs "during any period of

time while [Debtor] is obligated to pay direct alimony payments to [Defendant]."  (Debtor's

exhibit 4, Settlement Contract ¶ 15.)  Debtor's obligations to pay for the house and Defendant's

car have no similar termination provisions.  Instead, as to the house, paragraph 1 requires Debtor

to "pay promptly as same becomes due all existing mortgage debt[.]" (Debtor's exhibit 4,

Settlement Contract ¶ 1.)  As to the car, paragraph 3 requires Defendant to "pay promptly as

same becomes due all secured debt[.]" (Debtor's exhibit 4, Settlement Contract ¶ 3.)  In both

cases, the agreement expressly requires Debtor to pay "all" the debt on the property without any

limitation or termination upon Defendant's death or remarriage.

Defendant points to different language in the divorce agreement to argue that the

payments are alimony.  First, she contends Debtor's argument about the agreement's

organization is incorrect.  The agreement contains no subheadings that designate a certain group

of paragraphs as property division or alimony.  If the agreement were organized as Debtor

contends, paragraph 16, which deals with payment of debts, should be in the first group rather

than near the end of the agreement.  Next, Defendant points out that in paragraphs 1 and 3,

Debtor is directed to make the house and car payments as "indirect alimony" for Defendant.

According to Defendant, this indicates the payments were intended to be treated as alimony and

to cease upon Defendant's death or remarriage.  Notably, paragraph 14 requires Debtor to

11

maintain life insurance so long as he "is obligated to pay direct alimony to, <u>or indirect alimony</u>
<u>for the benefit of</u>" Defendant.

The Court finds Debtor's arguments as to the language more persuasive.  The agreement
expressly provides for termination of the cash alimony and health benefits upon Defendant's
death or remarriage.  It does not make a similar provision for the house and car payments.
Instead, the agreement specifies that Debtor must pay the house and car debts in full.
Defendant's interpretation of house and car provisions would require the Court to make
inferences based on the use of the phrase "indirect alimony," which is not defined by the
agreement.  Defendant's attorney could have easily stated Debtor's obligation to make the house
and car payments would cease either at the termination of cash alimony or at Defendant's death
or remarriage–as he did in other sections of the agreement.  The fact that he used different
language to describe the house and car payments than he used to describe the cash alimony or the
medical benefits shows an intent to treat them differently.  For these reasons, the language of the
agreement weighs in favor of a finding that the payments at issue are not in the nature of alimony
or support.

Next, the Court considers the testimony of the parties about their intent with respect to the
payments.  In this case, their testimony seems self-serving and is not very illuminating.
Defendant testified that she believed Debtor's obligation to pay the house and car payments
would cease upon her death or remarriage and, thus, was part of her alimony.  Debtor, on the
other hand, testified that he believed he was required to pay the debts in full and had not
considered whether Defendant's death or remarriage would affect that requirement.  This
conflicting evidence offers no support either for or against a finding of dischargeability and is

12

unhelpful in the Court's analysis.

Proceeding to the parties' relative financial positions at the time of the divorce, it is uncontested that Debtor is the sole source of financial support for both of them.  However that does not mean all payments he makes on her behalf were intended as support.  The amount of money available to support both parties and how that money is divided is relevant to the inquiry. In Long v. Calhoun (In re Calhoun), 715 F.2d 1103 (6th Cir. 1983), the court said that even when payments otherwise appear to be support, the court must consider whether the amount is "so excessive that it is manifestly unreasonable," to treat it as support.  Id. at 1110.  This consideration is particularly important in uncontested divorces–as in this case–to ensure the amount designated as support "does not clearly exceed that which might reasonably have been awarded as support by a state court after an adversarial proceeding."  Id. at 1110 n.12.

Even ignoring health and medical expenses, there is a significant discrepancy between the parties' income under the divorce agreement.  Defendant receives $1,400 in cash, $756 for housing and $451 for transportation–a total of $2,607.  Debtor, on the other hand, is left with only $1,778 to cover housing, transportation, and other living expenses.  In other words, Debtor is required to subsist on a substantially smaller income (relative to the pool of money available) than Defendant–$829 less.  He has been unable to do so, and filed this bankruptcy case as a result.

When medical expenses for both parties are included in the calculation, the income gap looms even larger because Debtor pays more than $1,000 per month for Defendant's COBRA insurance and other medical expenses but pays only $204 per month for his own medical insurance.  The differential will only escalate with time.  Once Defendant's eligibility for

COBRA expires, she likely will be uninsurable because, even at the relatively young age of 54,

she already suffers from multiple chronic medical conditions.  In the absence of COBRA or other

insurance, Debtor will be obligated to bear the full burden of Defendant's medical costs.

Debtor is unlikely to find relief from these obligations in state court.  Under Georgia law,

Debtor cannot seek modification of alimony unless he can show "a change in the income and

financial status of either former spouse."  O.C.G.A. § 19-6-19(a) (Supp. 2009).  Debtor has had

no such change since the divorce.  Even if he could show a change in circumstances, the divorce

agreement contains an antimodification provision that can be enforced under state law.  Varn v.

Varn, 248 S.E.2d 667, 669 (Ga. 1978) ("parties to an alimony agreement may obtain

modification unless the agreement expressly waives the right of modification by referring

specifically to that right").

The obligations that Debtor concedes are support already strain his finances.

Furthermore, it was foreseeable at the time the agreement was executed that Defendant's medical

costs alone eventually would be unmanageable.  Because it is unreasonable to require support

beyond a debtor's ability to pay, the existence of other excessive undisputed support payments

suggests the parties did not intend the house and car payments also to serve as support.

A final consideration in this analysis of the parties' intent is how they treated the house

and car payments for income tax purposes.  At Defendant's request, Debtor did not claim a

deduction for the payments as alimony.[5]  This is simply additional evidence that the parties–and

---

[5] Under federal income tax law, payments to a third party can be treated as alimony for
tax purposes–in which case the person receiving the benefit of the payments must declare them
as income and the payer may deduct them–only if all of the following requirements are satisfied:
(1) the payments are required by the divorce agreement; (2) the parties file separate returns; (3)
the payment is in cash, including check or money order; (4) nothing in the divorce agreement

14

Defendant in particular–did not intend the payments to serve as support.

Conclusion

Based on the foregoing discussion of the evidence, the Court is persuaded the house and car payments at issue were not intended by the parties as support. The most important factor in this conclusion is the language of the divorce agreement, which contemplates full repayment of the house and car debts by Debtor without regard to Defendant's death or remarriage. The conclusion is also supported by the parties' decision–primarily driven by Defendant–not to treat the payments as alimony for income tax purposes. The Court is also mindful that Debtor is unable to fulfill his monthly obligations under the divorce agreement while providing for his own modest support. When taken together, this evidence indicates the parties did not intend the payments to serve as support. Consequently, the Court finds the mortgage payments and car payments required by Debtor under the divorce agreement do not satisfy the requirements of a domestic support obligation. Therefore, they are not excepted from discharge under 11 U.S.C. §§ 1328(a)(2) and 523(a)(5). The Court will enter judgment for Debtor.

An Order in accordance with this Opinion will be entered on this date.

END OF DOCUMENT

---

states the payments are not to be treated as alimony for tax purposes; (5) the parties are legally separated and living in separate households; (6) payments are not required after the recipient spouse dies; and (7) the payments are not treated as child support. IRS Pub. 17. See also 26 U.S.C. § 71(b) and 26 CFR 1.71-1 et seq.